**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

———————————————————————

| | | |
|---|---|---|
| CBS OUTDOOR INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Hon. Harold A. Ackerman |
| | ) | |
| NEW JERSEY TRANSIT | ) | |
| CORPORATION; ALL VISION, LLC; and | ) | Civil Action No. 06-2428 (HAA) |
| STUART BROOKS, in his official capacity | ) | (consolidated) |
| as Director of Outdoor Advertising for the | ) | |
| New Jersey Department of Transportation, | ) | |
| | ) | **OPINION AND ORDER** |
| Defendants. | ) | |

———————————————————————

| | |
|---|---|
| CAROLE MEDIA, LLC, | ) |
| a New Jersey Limited Liability Company, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| NEW JERSEY TRANSIT | ) |
| CORPORATION; and ALL VISION, LLC, | ) |
| | ) |
| Defendants. | ) |

———————————————————————

Jonathan D. Schiller, Esq.
Hamish P.M. Hume, Esq.
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, N.W.
Washington, D.C. 20015

David Stone, Esq.
Robert A. Magnanini, Esq.
BOIES, SCHILLER & FLEXNER LLP
150 John F. Kennedy Parkway, 4th Floor
Short Hills, New Jersey 07078

Louis L. D'Arminio, Esq.
Elliot Pell, Esq.
PRICE, MEESE, SHULMAN & D'ARMINIO, P.C.
Mack-Cali Corporate Center
50 Tice Boulevard
Woodcliff Lake, New Jersey 07677-7644
*Attorneys for Plaintiff CBS Outdoor Inc.*

Russel D. Francisco, Esq.
WOLFF & SAMSON PC
1 Boland Drive
West Orange, New Jersey 07052
*Attorneys for Plaintiff Carole Media, LLC*

Anne Milgram, Esq.
Attorney General of New Jersey
James H. Martin, Esq.
Assistant Attorney General
Kenneth M. Worton, Esq.
Melanie E. Brown, Esq.
Deputy Attorneys General
OFFICE OF THE ATTORNEY GENERAL OF NEW JERSEY
Division of Law, 12th Floor
One Penn Plaza East
Newark, New Jersey 07105-2246
*Attorneys for Defendants New Jersey Transit Corporation and Stuart Brooks*

Ronald L. Glick, Esq.
STEVENS & LEE, PA
1415 Marlton Pike East – Suite 506
Cherry Hill, New Jersey 08034
*Attorneys for Defendants All Vision, LLC*


**ACKERMAN**, **Senior District Judge:**

This consolidated matter comes before the Court on the motions to dismiss (Docket Nos.

10 and 12 in Case No. 06-2428 and Docket Nos. 9 and 10 in Case No. 06-4529) filed by

Defendants New Jersey Transit Corporation ("NJ Transit"), All Vision, LLC ("All Vision"), and

Stuart Brooks.  Defendants ask the Court to dismiss the Complaints filed by Plaintiffs CBS

2

Outdoor, Inc. ("CBS Outdoor") and Carole Media, LLC ("Carole Media"). Plaintiffs have also filed motions for a preliminary injunction (Docket Nos. 43, 45, and 53 in Case No. 06-2428). For the following reasons, Defendants' motions to dismiss are GRANTED. Because this case shall be dismissed, this Court need not address the merits of Plaintiffs' motions for a preliminary injunction.

## *Background*

This case concerns the operation of billboards on property owned by NJ Transit, New Jersey's public transportation corporation. At the outset, a brief discussion of the nature of the billboard industry, also known as the outdoor advertising industry, is necessary for a full understanding of this case.

Plaintiffs operate billboards "typically located on real estate owned by another person, who is not engaged in the business of outdoor advertising." (CBS Outdoor First Am. Compl. ¶ 12; *see also* Carole Media Compl. ¶ 11.) Billboard companies such as Plaintiffs "typically obtain[] licenses or leases from the owners of the real estate that permit [the billboard company] to erect and maintain billboards on a long-term basis." (CBS Outdoor First Am. Compl. ¶ 12; *see also* Carole Media Compl. ¶ 11.) Plaintiffs allege that a billboard operator faces significant investment costs, including "locating, obtaining access to, and investing in the development and maintenance of profitable outdoor advertising sites suitable for billboards." (CBS Outdoor First Am. Compl. ¶ 14; *see also* Carole Media Compl. ¶ 13.) According to Plaintiffs, the "development of even a single successful outdoor advertising site requires substantial investment on the part of the outdoor advertising company that is developing it." (CBS Outdoor First Am.

Compl. ¶ 15; *see also* Carole Media Compl. ¶ 14.)  Such investment includes, among other costs: finding a potential site; hiring attorneys, engineers, and other professionals needed to obtain all necessary approvals for operating a billboard on the site; creating a construction plan for erecting the billboards; paying for the physical construction and erection of the billboard; deploying sufficient sales force to sell advertising on the billboard; and maintaining the physical billboard and related structures.  If the billboard company purchases a fully-developed and operating billboard, the company generally pays a higher price to compensate the selling entity for its prior payment of some of the inherent costs, such as those for obtaining approvals and for physical construction.

Plaintiffs contend that with regard to the operation of billboards owned by railroads, billboard companies typically enter into "annual licenses with railroads (generally through outside management agents that represent the railroads) that allow the outdoor advertising companies to operate billboards on the sites."  (CBS Outdoor First Am. Compl. ¶ 19; *see also* Carole Media Compl. ¶ 16.)  Such licenses are "of a standard form throughout the industry" and are "typically presented by the railroads on a 'take it or leave it' basis, and the terms are therefore not negotiated or adjusted in each instance."  (CBS Outdoor First Am. Compl. ¶ 19; *see also* Carole Media Compl. ¶ 16.)  CBS Outdoor and Carole Media both allege that the "general industry practice is for railroads not to terminate a license with an outdoor advertising company that is performing its obligations under the license, unless the railroad needs to use the land for development [of its railway] or is going to sell the land."  (CBS Outdoor First. Am. Compl. ¶ 20; *see also* Carole Media Compl. ¶ 17.)

4

I.      **Plaintiffs' Billboards on NJ Transit Property**

CBS Outdoor (formerly known as Viacom Outdoor) currently owns and operates over

160 billboards on land owned by NJ Transit; Carole Media owns and operates three billboards on

NJ Transit property.  CBS Outdoor and its predecessors have operated billboards on NJ Transit

property for many years.  NJ Transit leases its property for billboard usage through a

management agent.  From 1997 to 2004, Transportation Displays, Inc. ("TDI") had the

management contract with NJ Transit for billboard site licensing.  CBS Outdoor, and its

predecessor Outdoor Systems, Inc. ("Outdoor Systems"), entered into licenses with explicit one-

year terms with TDI that were renewable for subsequent terms but also terminable on 30-days

notice.  According to CBS Outdoor, its licenses and those of its predecessor were routinely

renewed each year absent licensee default, NJ Transit's need to sell the land, or NJ Transit's need

to use the land for non-billboard development.  Carole Media makes similar allegations regarding

its three billboards on NJ Transit property.  CBS Outdoor alleges that its parent company, CBS

Corporation ("CBS"), paid over $8.7 billion to purchase Outdoor Systems in part based on the

reasonable expectation that NJ Transit and other property owners would continue to renew

existing licenses that allowed Outdoor Systems to own and operate billboards on the owners'

land.

II.     **Plaintiffs' Asserted Property Interests Related to Their Billboards on NJ Transit
        Property**

Plaintiffs assert various property rights stemming from their operation of billboards on NJ

Transit property.  These purported property rights include:

(a) a license [from NJ Transit through its managing agent] to use a

5

particular parcel of land to operate a billboard; (b) the physical
billboard itself; (c) the State permit that allows the operation of the
billboard in the particular location; and (d) the local municipal
approvals or variances to operate the billboard in the respective location and municipality.

(CBS Outdoor First Am. Compl. ¶ 35; *see also* Carole Media Compl. ¶ 23.)

Several of Plaintiffs' allegations regarding these property interests are noteworthy.

Plaintiffs contend that the value of these property rights depends in significant part on the alleged

high likelihood of continued license renewal by NJ Transit.  With regard to the physical billboard

itself, such property includes the structures, equipment, and materials that comprise and support

the billboard.  The State permits are issued pursuant to the New Jersey Roadside Sign Control

and Outdoor Advertising Act ("Outdoor Advertising Act"), N.J. Stat. Ann. § 27:5-5, *et seq.*

Plaintiffs allege that while Plaintiffs have the ability to "transfer each of [their] State permits to a

third party through an assignment,"  "[e]ach State permit provides [Plaintiffs] with an exclusive

right to use the site to which it applies.  No other person is entitled to operate a billboard on any

site operated by [Plaintiffs] pursuant to one of its permits."  (CBS Outdoor First Am. Compl. ¶¶

55, 54; *see also* Carole Media Compl. ¶ 37, 36.)  Plaintiff CBS Outdoor alleges that many of its

billboards on NJ Transit property are "non-conforming use permits" because the permits were

issued before the effective date of restrictions set forth in the Outdoor Advertising Act that would

otherwise prohibit the permits from being issued.[1]  CBS Outdoor claims particular value in these

exclusive permits, because NJDOT cannot issue "new" non-conforming use permits, and

therefore no other company could operate a billboard on property covered by CBS Outdoor's

---

[1]While CBS Outdoor or its predecessors have operated billboards on NJ Transit property
for many years, Carole Media first obtained licenses for its three billboards on NJ Transit
property in 2001 and 2002.  Therefore, Carole Media's Complaint does not contain allegations
regarding non-conforming use permits.

non-conforming use permits unless CBS Outdoor agrees to assign the permits to the other company.

In a similar vein, Plaintiffs claim that their local approvals and zoning variances have considerable value because many local governments might not be willing to grant new approvals to a new billboard company, in part because some of these approvals were granted many years ago or before some particular municipalities promulgated zoning ordinances restricting outdoor advertising. As discussed further below, recent amendments to New Jersey outdoor advertising law require that local approvals be granted before the state may issue billboard permits. Carole Media claims that its billboards were erected before this new law, and therefore it was able to obtain state permits without first securing local approval.

III.   **"Billboardgate," NJ Transit's Award of the Management Contract to All Vision, and the Enactment of the 2004 Outdoor Advertising Amendments**

In May 2003, then-Governor James E. McGreevey created the Billboard Policy & Procedure Task Force ("Task Force"), after allegations that "two of his top aides used political clout to arrange for permits to build billboards in locations that would be highly lucrative, even though some of the locations were governed by ordinances prohibiting all outdoor advertising." (CBS Outdoor First Am. Compl. ¶ 65.) Plaintiffs refer to this political scandal as "Billboardgate." Governor McGreevey issued an executive order establishing the Task Force to undertake a comprehensive review of the existing policies for the sale, lease, development, construction, and siting of all billboards in New Jersey. The Task Force's final report made numerous recommendations, including: requiring all state entities to adopt competitive bidding

standards for the sale, lease, development, and construction of billboards on public property; mandating greater involvement by local governments before new billboards are constructed on State property; and narrowing the grant of public interest waivers for the issuance of billboard permits by the New Jersey Department of Transportation ("NJDOT") such that these waivers must be approved by the State House Commission.  Plaintiffs allege that the Task Force recognized that "any action taken by state agencies to terminate existing billboard licenses with outdoor advertising companies would raise serious concerns under the Takings Clause of the Fifth Amendment of the United States Constitution."  (CBS Outdoor First Am. Compl. ¶ 68; *see also* Carole Media Compl. ¶ 43.)  Plaintiffs' Complaints quote a passage from the Task Force's report that "noted that terminating an existing license and requiring the license holder to remove its billboard from state property 'could result in the finding of a taking . . . depending upon the specific circumstances and the reasonable investment-backed expectations of the billboard operator.'" (CBS Outdoor First Am. Compl. ¶ 68; *see also* Carole Media Compl. ¶ 43.)

Around the time that the Task Force issued its report, TDI managed licenses covering approximately 450 billboards on NJ Transit property.  TDI is a wholly-owned subsidiary of Infinity Broadcasting System, which was acquired by CBS in 1996.  TDI or its predecessors had managed NJ Transit billboards for many years, and TDI's contract was scheduled to expire in 2004.  In October 2003 – several months after the formation of the Task Force – NJ Transit issued a Request for Proposal ("RFP") to put out for competitive bidding, among other items a five-year billboard management contract.[2]  Only two companies submitted bid proposals for

---

[2]The RFP stated that it was "seeking proposals from qualified firms to create and manage revenue-generating Bus, Rail and Light Rail, Street Furniture and Billboard Advertising inventory and for the application of new advertising technologies and programs to the agency's

billboard advertising: CBS Outdoor Group, Inc. ("CBS Outdoor Group") (formerly Viacom

Outdoor Group, Inc.), the successor company to TDI and the incumbent managing agent, and

Defendant All Vision.[3]  NJ Transit awarded the management contract to All Vision.  CBS

Outdoor Group initiated a protest of NJ Transit's award of the contract to All Vision.  CBS

Outdoor Group alleged in its protest to NJ Transit, among other things, that NJ Transit's

evaluation and scoring of the competing proposals was flawed and that All Vision had enjoyed

an undisclosed and unfair competitive advantage in the bidding process.  NJ Transit denied the

protest.  CBS Outdoor Group appealed to the Superior Court of New Jersey, Appellate Division,

and that Court affirmed NJ Transit's decision.  *See Viacom Outdoor Group, Inc. v. New Jersey*

*Transit Corp.*, 2006 WL 2192008 (N.J. Super. Ct. App. Div. Aug. 4, 2006) (per curiam)

(unpublished opinion), *cert. denied*, 188 N.J. 578 (2006).  In that opinion, the Appellate Division

rejected many of the same allegations that CBS Outdoor raises in its instant Complaint (CBS

Outdoor First Am. Compl. ¶¶ 80-89) regarding the deficiencies in All Vision's proposal and

alleged bias on the part of NJ Transit.  2006 WL 2192008, at *5-8.

The New Jersey Legislature responded to the Task Force's report by enacting legislation

in June 2004 amending various statutes governing billboards ("2004 Outdoor Advertising

Amendments" or "Amendments").  The 2004 Outdoor Advertising Amendments provide that "a

State entity . . . shall not enter into any contract or agreement for the sale, lease or license of real

---

facilities and rolling stock."  *Viacom Outdoor Group, Inc. v. New Jersey Transit Corp.*, 2006 WL
2192008, at *1 (N.J. Super. Ct. App. Div. Aug. 4, 2006) (per curiam) (unpublished opinion),
*cert. denied*, 188 N.J. 578 (2006).

[3]CBS Outdoor Group and CBS Outdoor appear to be separate entities owned by the same
parent corporation.

property owned or controlled by it, or of any interest therein, with any person, firm, partnership

or corporation for the purpose of displaying any advertisement . . . without publicly advertising

for bids."  N.J. Stat. Ann. § 52:31-1.1a.  The Amendments further state that "any State entity may

enter into [a] contract or agreement with any of its current contractors, tenants or licensees with

respect to the current real property on which they are a contractor, tenant or licensee for the

purpose of displaying advertisement, for a period of time not to exceed five years, without

publicly advertising for bids."  *Id.*  The Amendments also "reflected the Task Force's

recommendation that local governments should be more involved in the process for approving

billboards," (CBS Outdoor First Am. Compl. ¶ 73; *see also* Carole Media Compl. ¶ 48) by

providing that the commissioner of NJDOT shall not issue a permit for a new billboard unless a

public hearing has been held by the local municipality and, where the permit applicant is a

private entity, such entity has received all relevant approvals required by the municipality, *see*

N.J. Stat. Ann. § 27:5-8.


## IV.    The "Monetization Program"

In September 2005, Plaintiffs allege that Defendants NJ Transit and All Vision, under the

guise of fulfilling the competitive bidding mandate of the Amendments, began to implement

what Plaintiffs deem the "Monetization Scheme" and what the Court will refer to as the

"Monetization Program" or the "Program."  Plaintiffs claim that the Monetization Program is

"designed to transfer the value of [Plaintiffs'] property rights to All Vision and New Jersey

Transit in the form of a single, lump sum payment."  (CBS Outdoor First Am. Compl. ¶ 97; *see*

*also* Carole Media Compl. ¶ 52.)  The Program was summarized in letters sent by All Vision to

10

Plaintiffs: "All locations will be competitively bid for a 20 to 22 year license agreement with NJ TRANSIT.  New license agreements will terminate only for NJ TRANSIT development."  (CBS Outdoor First Am. Compl. ¶ 92; *see also* Carole Media Compl. ¶ 53.)  The letters further provided that all current billboard locations would be subject to termination and a competitive bidding process.  CBS Outdoor alleges that Defendants "are seeking to devalue CBS Outdoor's property rights associated with its non-conforming use permits, in an attempt to acquire those rights for a small fraction of their fair market value."  (CBS Outdoor First Am. Compl. ¶ 93.)  CBS Outdoor further claims that Defendants "requested that CBS Outdoor transfer all of its rights to its billboards (including non-conforming use permits) to NJ Transit.  NJ Transit and All Vision requested the transfer of these rights in exchange for a payment that is far less than the fair market value of those rights."  (*Id.* ¶ 94.)  Carole Media makes similar allegations, absent the additional element of non-conforming use permits.[4]  Carole Media further claims that Defendants have bid out all three of its billboard locations to Clear Channel for a twenty-year license.  While NJ Transit and All Vision have notified Plaintiffs of the termination of their billboard licenses, and have "continued to threaten the imminent implementation of the Monetization Scheme" (CBS Outdoor First Am. Compl. ¶ 107), Plaintiffs have continued to operate their billboards subject to the old licenses on a month-to-month basis, apparently based on the parties' attempt to resolve their disputes.

---

[4]"New Jersey Transit and All Vision have threatened to destroy Carole Media's property rights by forcing it to remove their billboards within 30 days unless it accedes to their demand that Carole Media transfer its permits, license and billboards to New Jersey Transit in exchange for a paltry payment that is far less than the fair market value of those rights.  New Jersey Transit and All Vision are therefore using this coercive, unconscionable tactic as a means of acquiring those property rights for a fraction of their fair market value."  (Carole Media Compl. ¶ 54.)

Plaintiffs more generally allege that the Monetization Program is designed to "monetize" the licenses and accelerate the receipt by All Vision and NJ Transit of a large portion of the license price by requiring a substantial "up-front" payment.  New licensees, according to Plaintiffs, "must agree to pay an up-front, accelerated payment equal to a percentage of all future revenues that bidder expects to earn over the twenty-year life of the license."  (CBS Outdoor First Am. Compl. ¶ 98; *see also* Carole Media Compl. ¶ 58.)  In their central attack on the Monetization Program, CBS Outdoor asserts that:

> New Jersey Transit has agreed to pay All Vision a fixed percentage of each monetization payment that is received pursuant to the Monetization Scheme.  All Vision will therefore receive a percentage of twenty years' worth of revenue on each New Jersey Transit license, even though All Vision's management contract has a term of only five years.  This represents a grossly disproportionate and irrational payment to All Vision that is contrary to the purpose of the 2004 Outdoor Advertising Amendments. . . .  The Monetization Scheme therefore represents an attempt by New Jersey Transit to acquire CBS Outdoor's property rights at a small fraction of their fair market value, and then to sell those rights for their full fair market value.
>
> In addition, the Monetization Scheme represents an attempt to transfer economic value owned by CBS Outdoor to All Vision.  Specifically, the Monetization Scheme will, if successful, result in the transfer of the value of CBS Outdoor's property interest in its licenses, billboards, and permits, and in its reasonable expectation of future renewals, to All Vision, which will immediately reap a substantial portion of the value of these future renewals through a commission equal to a substantial portion of the up-front monetization payments that will be paid for the twenty-year licenses.

(CBS Outdoor First Am. Compl. ¶¶ 99, 101, 102; *see also* Carole Media Compl. ¶ 58.)  Plaintiffs advance that no governmental or public purpose is served by the Monetization Program; specifically, they claim that the Program contradicts the purpose of the 2004 Outdoor Advertising

12

Amendments.[5]  Thus, Plaintiffs claim that the Monetization Program threatens to deprive them of a substantial portion of the value of their property rights, if not a complete deprivation of that value.  CBS Outdoor values its asserted property rights at issue at over $15 million, while Carole Media values its property interests at over $4 million.  (CBS Outdoor First Am. Compl. ¶ 106; Carole Media Compl. ¶ 60.)

Notably, the Appellate Division's opinion rejecting CBS Outdoor Group's protest of NJ Transit's award of the billboard management contract to All Vision reveals that the alleged Monetization Program was central to All Vision's successful bid.  The Appellate Division discussed the evaluation of the competing bid proposals by NJ Transit's Technical Evaluation Committee ("TEC"):

> [T]he TEC recognized that Viacom's proposal provided more guaranteed revenue per year, it also noted that unlike All Vision, [Viacom] was silent on ways to execute the Billboard Task Force's

_____

[5]CBS Outdoor's Complaint states:

> Those Amendments were designed to impose greater regulatory control over the licensing of billboards on public land, precisely in order to prevent state agencies from entering into special arrangements with specific parties that enable those parties to capture a disproportionate value from those billboards.  The Monetization Scheme specifically empowers All Vision to capture a disproportionate value by giving it revenue that is not attributable to the period of time in which it has a management contract with New Jersey Transit.

> The 2004 Outdoor Advertising Amendments required state agencies to publicly advertise billboard contracts, but permitted those agencies to enter into five-year contracts with incumbent licensees without any public advertising.  The Monetization Scheme, by contrast, seeks to create new incumbent licensees who will be given a twenty-year grace period before there is any renewal or public advertising for their contracts.

(CBS Outdoor First Am. Compl. ¶¶ 104-05; *see also* Carole Media Compl. ¶¶ 58-59.)

> recommendations. . . . "All Vision was far more responsive than
> Viacom to our RFP's emphasis on entrepreneurial enhancement
> strategies. . . . Viacom offered no innovative strategies or
> management approaches to enhancing the existing inventory or
> revenues in a period of constrained growth. All Vision will pursue
> upgrading locations, which may result in a reduction in the total
> number of billboards on NJ Transit property but higher revenues in
> the long run. *All Vision also proposed issuing extended-term licenses
> that, if successful, offer a substantial revenue opportunity to NJ
> Transit.*"

*Viacom Outdoor*, 2006 WL 2192008, at *3 (quoting TEC summary) (emphasis added).  In

protesting the award to All Vision, CBS Outdoor Group argued that "All Vision's monetization

concept was beyond the requirements of the proposal request."[6]  *Id.*  The Appellate Division,

reviewing NJ Transit's denial of the protest, found that

> The RFP, as initially issued and amended, is replete with evidence of
> the desire of the agency to attract new proposals, to maximize
> income, and to entertain new or innovative ideas.  The proposal
> submitted by Viacom did not reflect these aspirations of the agency.
> On the other hand, the All Vision proposal was singularly in tune
> with the desire of NJ Transit to maximize income and to entertain
> innovative technologies and approaches to achieve its goal.

*Id.* at *7.  The court further stated that the "NJ Transit response to the All Vision monetization

proposal reflects that the agency's eagerness for additional revenue was tempered by reality"

because in evaluating the proposal, "it discounted the projected proceeds from monetization of

billboard assets by fifty percent."  *Id.*  The court also rejected CBS Outdoor Group's allegations

of favoritism and bias as "founded on unsupported allegations and speculation lacking factual

support."  *Id.* at 8.  Thus, the Monetization Program was an important part of All Vision's

---

[6]The court described "monetization" as "involv[ing] assigning a one-time asset value to
an asset in addition to annual rent/revenue payments."  *Viacom Outdoor*, 2006 WL 2192008, at
*3 n.2.

winning bid, and NJ Transit decided that the proposed Program addressed its needs to maximize

income, foster innovative strategies, and execute the Task Force recommendations.


**V.      The Weehawken Contract**

Finally, CBS Outdoor alleges with regard to two billboards it operates within the Lincoln

Tunnel helix area in Weehawken, New Jersey, on NJ Transit property, that it is the assignee of a

contract with the Township of Weehawken to operate the billboards through 2016.  According to

CBS Outdoor, this contract – entered into with a prior operator and assigned to CBS Outdoor –

required a large up-front payment to Weehawken, and also stipulated that CBS Outdoor would

allow NJ Transit to use one side of each of the two billboards for public advertisements and

promotion of mass transportation use.  CBS Outdoor asserts that "New Jersey Transit and All

Vision's implementation of the 2004 Outdoor Advertising Amendments substantially impairs the

obligations of the contractual agreement between CBS Outdoor and the township of

Weehawken," of which NJ Transit should have known because it benefitted from the contract,

because the Monetization Program works to deprive CBS Outdoor of the full value of the

Weehawken contract.  (CBS Outdoor First Am. Compl. ¶ 115.)


**VI.     Procedural History**

CBS Outdoor filed this suit in May 2006, Civil No. 06-2428, and its case was assigned to

this Court.  In July 2006, CBS Outdoor filed its First Amended Complaint, which presents five

counts.  In Count I, CBS Outdoor seeks declaratory and injunctive relief pursuant to 42 U.S.C. §

1983 for Defendants' violation of substantive due process guaranteed by the Due Process Clauses

of the United States and New Jersey Constitutions and for Defendants' unlawful taking

prohibited by the Takings Clauses of the United States and New Jersey Constitutions.  Count II

seeks similar relief by way of enjoining Brooks, the Director of Outdoor Advertising for NJDOT,

from issuing new non-conforming use or other permits.  Count III asserts a claim for just

compensation pursuant to the Takings Clauses of the federal and state Constitutions.  Count IV

presents a claim of unconstitutional interference by a state entity with the Weehawken contract in

violation of the Contract, Takings, and Due Process Clauses of the federal and state

Constitutions.  Finally, Count V asserts claims of *ultra vires* and irrational state action and

requests declaratory and injunctive relief.

Carole Media filed its similar Complaint in September 2006, Civil No. 06-4529, and that

case was assigned to District Judge Stanley R. Chesler.  Carole Media's Complaint has eight

counts, and names All Vision and NJ Transit as Defendants; Carole Media does not bring any

claims against Brooks.  In addition to the claims asserted by CBS Outdoor, Carole Media also

brings state law claims for breach of the covenant of good faith and fair dealing, tortious

interference with contractual relations, and tortious interference with prospective business

advantage.[7]  Notably, while CBS Outdoor's constitutional challenge attacks "[t]he 2004 Outdoor

Advertising Amendments and the implementation of the All Vision Monetization Scheme" (CBS

Outdoor First Am. Compl. ¶¶ 122, 130), Carole Media only challenges the Program itself.  "Nor

is Carole Media challenging any of the applicable statutes.  Carole Media has not asserted a

single count challenging the constitutionality of the Amendment or any other New Jersey

_____

[7]Naturally, Carole Media's Complaint does not include the Contract Clause allegations
regarding the CBS Outdoor-Weehawken contract.

16

statute."  (Carole Media Br. at 21 n.7.)

On July 28, 2006, Defendants NJ Transit and Brooks filed their motion to dismiss CBS

Outdoor's Complaint, or in the alternative for abstention; All Vision joined this motion on

August 14, 2006.  After the completion of briefing, CBS Outdoor moved to consolidate its case

with Carole Media's case that was before Judge Chesler.  NJ Transit filed its similar motion to

dismiss Carole Media's Complaint before Judge Chesler, or in the alternative for abstention, on

November 9, 2006, and All Vision joined that motion four days later.  In December 2006, before

briefing on the Carole Media motion was complete, this Court entered an Order consolidating the

Carole Media case before Judge Chesler with the CBS Outdoor case before this Court.

On June 1, 2007, Plaintiffs filed motions for a preliminary injunction to prevent

Defendants from terminating their licenses, taking steps to evict them from their billboard

locations on NJ Transit property, and to prevent Defendant Brooks from issuing any new

billboard permits or granting any applications for new permits.

*Analysis*

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint, or a

count therein, for failure to state a claim upon which relief may be granted.  In evaluating a

motion to dismiss pursuant to Rule 12(b)(6), the court must "accept as true all allegations in the

complaint and all reasonable inferences that can be drawn therefrom, and view them in the light

most favorable to the plaintiff."  *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) (quoting

*Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005)); *see also, e.g.*, *Labov v. Lalley*, 809 F.2d

220, 221 (3d Cir. 1987).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does

17

not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). A complaint must contain "enough facts to state a claim to relief that is plausible on its face" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 127 S. Ct. at 1974, 1965. A court need not accept "'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness," *Wyeth v. Ranbaxy Labs., Ltd.*, 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Kanter*, 489 F.3d at 177 ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.") (quoting *Evancho*, 423 F.3d at 351).

"[I]t is well settled that procedural issues such as standing, mootness and ripeness are to be determined prior to any substantive analysis" on a motion to dismiss pursuant to Rule 12(b)(1) or Rule 12(b)(6). *ISP Envtl. Servs., Inc. v. City of Linden*, Civ. No. 05-4249, 2007 WL 1302995, at *7 n.1 (D.N.J. May 3, 2007) (citing *Palazzolo v. Rhode Island*, 533 U.S. 606 (2001); *Hurley v. Columbia Cas. Co.*, 976 F. Supp. 268, 272 (D. Del. 1997); *Barmo v. Reno*, 899 F. Supp. 1375, 1379 (E.D. Pa. 1995)).

**I.      Plaintiffs' Takings Claims Are Unripe**

The Takings Clause of the Fifth Amendment to the United States Constitution, provides

that private property shall not "be taken for public use, without just compensation."  U.S. Const.

amend. V.  This prohibition applies to state and local governments through the Fourteenth

Amendment.  *Kelo v. City of New London*, 545 U.S. 469, 472 n.1 (2005) (citing *Chicago,*

*Burlington & Quincy R.R. Co. v. City of Chicago*, 166 U.S. 226, 239 (1897)).  The New Jersey

Constitution has a parallel, "coextensive" provision.  N.J. Const. art. I, § 20; *Pheasant Bridge*

*Corp. v. Twp. of Warren*, 169 N.J. 282, 296 (2001).  As its language makes clear, the Takings

Clause "does not prohibit the taking of private property, but instead places a condition on the

exercise of that power."  *First English Evangelical Lutheran Church v. County of Los Angeles*,

482 U.S. 304, 314 (1987).  "In other words, it 'is designed not to limit the governmental

interference with property rights *per se*, but rather to secure compensation in the event of

otherwise proper interference amounting to a taking.'"  *Lingle v. Chevron U.S.A. Inc.*, 544 U.S.

528, 537 (2005) (citing *First English*, 482 U.S. at 315) (emphasis in original).

Through various federal and state constitutional provisions, Plaintiffs challenge the

termination of their leases for billboards on NJ Transit property and the implementation of the

alleged Monetization Program.[8]  They essentially attack what they perceive as a plan to deprive

them of the entire value of their asserted property interests with regard to their billboards on NJ

Transit property.  In *Williamson County Regional Planning Commission v. Hamilton Bank*, 473

U.S. 172 (1985), the Supreme Court established certain requirements which a plaintiff must meet

_____

[8]CBS Outdoor and Carole Media make many of the same arguments regarding their
constitutional claims.  Therefore, the Court will refer to their arguments collectively except
where their contentions diverge.

for a takings claim, and related as-applied constitutional claims, to be ripe.  "The ripeness

doctrine serves to determine whether a party has brought an action prematurely and counsels

abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and

prudential requirements of the doctrine."  *County Concrete Corp. v. Twp. of Roxbury*, 442 F.3d

159, 164 (3d Cir. 2006) (internal citations and quotation marks omitted).  "Because ripeness

affects justiciability . . . unripe claims should ordinarily be disposed of on a motion to dismiss,

not summary judgment." *Taylor Inv., Ltd. v. Upper Darby Twp.*, 983 F.2d 1285, 1290 (3d Cir.

1993); *see also Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 580 (1985)

("[R]ipeness is peculiarly a question of timing."); *R&J Holding Co. v. Redevelopment Auth. of

the Cty. of Montgomery*, Civil No. 02-9530, 2003 WL 22387034, at *4 (E.D. Pa. Oct. 15, 2003)

("In short, ripeness is a question of timing that addresses when it is appropriate for a court to take

up the asserted claim.").

  Defendants have moved to dismiss Plaintiffs' claims pursuant to Rule 12(b)(6) for failure

to state a claim and pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction due to

unripeness.  The Third Circuit has recognized that "[t]here is some disagreement among courts

and commentators as to whether the ripeness doctrine is grounded in the case or controversy

requirement or is better characterized as a prudential limitation on federal jurisdiction." *Taylor

Inv.*, 983 F.2d at 1289.   The Third Circuit has considered ripeness issues in reviewing motions in

the context of failure to state a claim and subject matter jurisdiction. *See County Concrete*, 442

F.3d at 163-64 (reviewing ripeness decisions in appeal from Rule 12(b)(6) dismissal); *Stern v.

Halligan*, 158 F.3d 729, 734 (3d Cir. 1998) (noting that satisfaction of *Williamson*'s

requirements implicates court's subject matter jurisdiction).  No matter which lens this Court

employs, the burden remains with Plaintiffs and the Court "is not limited to the face of the

pleadings in deciding such a motion.  As long as the parties are given an adequate opportunity to

address the justiciability of the claim, the district court may inquire, by affidavits or otherwise,

into facts as they exist."[9]  *Taylor Inv.*, 983 F.2d 1285 at 1290 n.7.

    In *Williamson*, the Supreme Court held that a takings claim is not ripe until "the

government entity charged with implementing the regulations [must have] reached a final

decision regarding the application of the regulations to the property at issue."  *Williamson*, 473

U.S. at 186.  Furthermore, the claimant must have sought "compensation through the procedures

the State has provided for doing so."  *Id.* at 194.  This latter requirement proves fatal to

Plaintiffs' takings claims, at least at this juncture.

    A.    <u>Although Plaintiffs refuse to categorize their claims as for "just compensation,"
the requirement of exhaustion still applies.</u>

    This Court initially must address Plaintiffs' arguments as to why the *Williamson*

exhaustion requirement should not apply to their claims.  CBS Outdoor contends that "CBS does

not seek to recover just compensation, and hence it would make no sense to require CBS first to

avail itself of State procedures for doing so."  (CBS Outdoor Br. at 32.)  It notes that it included a

claim for just compensation as Count III of its First Amended Complaint, but states that it

advances this claim "merely in order to preserve it, in case this Court ultimately (after hearing the

evidence) rejects all of CBS's other claims for declaratory and injunctive relief.  If that occurred,

a remand to state court may be appropriate."  (*Id.* at 32 n.20.)  Carole Media makes similar

_____

[9]The Court will focus primarily on Plaintiffs' allegations as made in their Complaint.
With regard to the "facts as they exist," this Court has reviewed the parties' subsequent filings,
and, as discussed below, finds highly persuasive the Appellate Division's opinion rejecting CBS
Outdoor Group's challenge to the bid won by All Vision.

arguments.  (Carole Media Br. at 21 n.7.)  Plaintiffs' arguments reflect a fundamental

misunderstanding of the Takings Clause and the jurisprudence regarding it.

As discussed above, the Takings Clause "'is designed not to limit the governmental

interference with property rights *per se*, but rather to secure compensation in the event of

otherwise proper interference amounting to a taking.'"  *Lingle*, 544 U.S. at 537 (citing *First

English*, 482 U.S. at 315) (emphasis in original).  Thus, because the Takings Clause "does not

bar government from interfering with property rights," but rather "expressly requires

compensation where government takes private property 'for public use,'" a claim seeking "an

*injunction* against the enforcement of a regulation . . . allege[d] to be fundamentally arbitrary and

irrational" quite simply "does not sound under the Takings Clause."  *Lingle*, 544 U.S. at 540,

543-44 (quoting *First English*, 482 U.S. at 315) (emphasis added).

In *Ruckelshaus v. Monsanto Co.*, the Supreme Court held that "equitable relief is not

available to enjoin an alleged taking of private property for a public use, duly authorized by law,

when a suit for compensation can be brought against the sovereign subsequent to a taking."  467

U.S. 986, 1016 (1984); *see also United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121,

127-28 (1985); *Carteret Sav. Bank, F.A. v. Office of Thrift Supervision*, 963 F.2d 567, 583 (3d

Cir. 1992).  Although *Monsanto* dealt with takings claims brought against the federal

government, *Williamson* extended its principles to takings claims brought against a state.  *See

Williamson*, 473 U.S. at 194-95.  Relying on the holding in *Monsanto* that takings claims against

the Federal Government are premature until the property owner has sought just compensation in

the Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491, the Supreme Court in

*Williamson* recognized that "[s]imilarly, if a State provides an adequate procedure for seeking

just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Williamson*, 473 U.S. at 195.

A court in this District has carefully synthesized these principles in a manner directly applicable here. In *Unix System Laboratories, Inc. v. Berkeley Software Design, Inc.*, Judge Debevoise explained that "the Supreme Court has expanded the scope of the federal takings cases by relying on them in analyzing takings claims against the state for just compensation" and "[t]he Supreme Court resolved *Williamson* using the same principles that it used for federal takings cases such as [*Monsanto*]." 832 F. Supp. 790, 805-06 (D.N.J. 1993). In fact, "the Supreme Court cited [*Monsanto*] itself for the proposition that '[i]f the [state] government has provided an adequate process for obtaining compensation, and if resort to that process yield[s] just compensation, then the property owner has no claim against the Government for a taking.'" *Id.* at 806 (quoting *Williamson*, 473 U.S. at 194) (alterations in original).

Thus, Judge Debevoise concluded that "the federal takings cases and *Williamson* teach that a plaintiff cannot bring a takings claim in federal district court, *whether for injunctive relief or damages*, until the plaintiff has sought and been denied just compensation." *Id.* at 806 (emphasis added). "This bar against federal takings relief is more than a jurisdictional bar under the Tucker Act " because "until a plaintiff has availed itself of a state's "adequate process for obtaining compensation," the plaintiff has suffered no harm and has no federal cause of action." *Id.* "'Where just compensation is available, a taking is not unconstitutional.'" *Id.* (quoting *Sec. Sav. Bank v. Dir., Office of Thrift Supervision*, 798 F. Supp. 1067, 1072 (D.N.J. 1992)).

This Court agrees with this well-supported reading of the law. "This maxim rests on the principle that so long as compensation is available for those whose property is in fact taken, the

governmental action is not unconstitutional."  *Riverside Bayview Homes*, 474 U.S. at 128; *see also Cowell v. Palmer Twp.*, 263 F.3d 286, 290 (3d Cir. 2001) (holding that relief need not be awarded in advance of the taking, but rather "'all that is required is that a reasonable, certain and adequate provision for obtaining compensation exist at the time of the taking'" (quoting *Williamson*, 473 U.S. at 194)); *cf. Bay View Inc. ex rel. AK Native Village Corps. v. Ahtna, Inc.*, 105 F.3d 1281, 1286 n.6 (9th Cir. 1997) ("[N]either injunctive nor declaratory relief is available for a takings claim against the United States."); *City of Cookeville v. Upper Cumberland Elec. Membership Corp.*, 484 F.3d 380, 394-95 & n.12 (6th Cir. 2007) (noting that "it appears that the district court erred on the merits in entering the injunction" because the Fifth Amendment does not require just compensation before property is taken).

CBS Outdoor contends that *Williamson* does not apply because it does not seek just compensation; rather, it claims that the Declaratory Judgment Act "allows individuals threatened with a taking to seek a declaration of the constitutionality of the disputed governmental action before potentially uncompensable damages are sustained."  *Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 71 n.15 (1978)).  However, in *Carteret Savings Bank*, the Third Circuit distinguished the *Duke Power* footnote, commenting that the footnote addressed a unique situation in that the *Duke Power* plaintiffs "were not requesting compensation for a taking, but rather were 'requesting a declaratory judgment that since the Price-Anderson Act d[id] not provide [an] assurance of adequate compensation in the event of a [nuclear catastrophe], it [was] unconstitutional."  963 F.3d at 584 (emphasis in original) (quoting *Duke Power*, 438 U.S. at 71 n.15).  *Duke Power* held that federal courts had jurisdiction "to hear a claim that an Act of Congress did not provide advance assurance of adequate compensation in the event of a taking,

24

and upon a finding to that effect, the Declaratory Judgment Act . . . provided a remedy."

*Chevron Chem. Co. v. Castle*, 499 F. Supp. 732, 743 (D. Del. 1980) (citing *Duke Power*).  "Once

a determination of Tucker Act availability [of adequate compensation] was made, however, a

declaratory judgment or other injunctive relief on the taking issue was unwarranted."  *Id.* (citing

*Duke Power*).  Plaintiffs make no such allegations here regarding the adequacy or inadequacy of

state remedies available for just compensation.  In fact, they seek to avoid such remedies, but, as

will be seen, this effort dooms their claims in federal court at this time.  In addition, even if the

footnote in *Duke Power* could possibly be read to suggest that district courts may be able to grant

a declaratory judgment in a takings case, the Supreme Court later held in *Monsanto* that equitable

relief is not available when a Tucker Act (federal) remedy, or state court remedy, can be

obtained.  *E.g.*, *Unix Sys.*, 832 F. Supp. at 806.[10]

    Thus, Plaintiffs cannot avoid *Williamson*'s exhaustion of state procedures requirement by

declining to categorize their claims as ones for just compensation.  The Takings Clause primarily

concerns itself with ensuring just compensation and is not violated until just compensation is

denied.  Plaintiffs also cannot utilize the Declaratory Judgment Act to backdoor their takings

---

[10]This Court notes that CBS Outdoor appears to overlook the "potentially uncompensable damages" portion of the language from the footnote in *Duke Power*.  CBS Outdoor does not allege that the damages it will sustain might be "potentially uncompensable."  Rather, in its Complaint CBS Outdoor expressly values its asserted property rights at issue at over $15 million, while Carole Media values its property interests at over $4 million.  (CBS Outdoor First Am. Compl. ¶ 106; Carole Media Compl. ¶ 60.)  Furthermore, CBS Outdoor acknowledges the *compensable* nature of its eventual damages by stating, for example, that it is "entitled to obtain a declaration of its private property rights to prevent Defendants from threatening to destroy these property rights in an effort to force CBS to sell its irreplaceable permits *for far less than their fair market value*." (CBS Outdoor Br. at 35 (emphasis added).)  In light of these allegations and arguments, in addition to the reasons stated above, CBS Outdoor's reliance on the limited language of *Duke Power* is unpersuasive.

claim into federal court without first complying with the Supreme Court's directives and utilizing state compensatory procedures.

      **B.**    <u>Plaintiffs' allegations do not sufficiently show that the alleged takings are not for a public use.</u>

The Fifth Amendment's just compensation requirement only applies to takings of private property "for public use."  Plaintiffs contend that the threatened taking by NJ Transit, in conjunction with All Vision, is for a purely private, non-public use and therefore is an unlawful, unconstitutional taking to which "just compensation" and the ripeness strictures of *Williamson* do not apply.  Several courts have suggested, as Plaintiffs argue, that *Williamson* does not apply where a taking is not justified by a public use.  The Ninth Circuit noted in *Armendariz v. Penman* that "[b]ecause a 'private taking' cannot be constitutional even if compensated, a plaintiff alleging such a taking would not need to seek compensation in state proceedings before filing a federal takings claim under the rule of [*Williamson*]."  75 F.3d 1311, 1320 n.5 (9th Cir. 1996). Similarly, the Fifth Circuit has held that the "Fifth Amendment prohibits both uncompensated takings and takings for a private purpose.  In other words, a taking for a private purpose is unconstitutional even if the government provides just compensation.  Accordingly, plaintiffs' failure to seek compensation for the alleged taking of their property for a private purpose does not render that claim unripe."  *Samaad v. City of Dallas*, 940 F.2d 925, 936-37 (5th Cir. 1991). Thus, if the alleged taking is for a "private purpose," then Plaintiffs do not have to meet the ripeness requirements of *Williamson*.

Indeed, statements by the Supreme Court in several cases support Plaintiffs' theory.  "The Court's cases have repeatedly stated that 'one person's property may not be taken for the benefit

of another private person without a justifying public purpose, even though compensation be paid.'" *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 241 (1984) (quoting *Thompson v. Consolidated Gas Corp.*, 300 U.S. 55, 80 (1937)).  More recently, the Supreme Court observed that "the Takings Clause presupposes that the government has acted in pursuit of a valid public purpose. . . . [I]f a government action is found to be impermissible – for instance because it fails to meet the 'public use' requirement or is so arbitrary as to violate due process – that is the end of the inquiry.  No amount of compensation can authorize such action."  *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 543 (2005).  Although *Lingle* addressed the standard to apply to determination of the merits of a takings claim, not whether such a claim is ripe, this Court finds the Supreme Court's language instructive on the instant question.  If "no amount of compensation" could authorize NJ Transit's alleged actions because it has not "acted in pursuit of a valid public purpose," then any claim for just compensation would be unnecessary, because the failure to meet the public use requirement ends the inquiry.  Thus, the Court will consider whether Plaintiffs have sufficiently alleged a violation of the public use requirement.

A court in the Eastern District of New York very recently provided a useful and authoritative review of the Supreme Court's cases regarding the public use requirement. *Goldstein v. Pataki*, 488 F. Supp. 2d 254 (E.D.N.Y. 2007).  Although *Goldstein* discussed this issue in the context of addressing the merits of a takings claim rather than a ripeness inquiry, the court's analysis applies equally to an assessment of public/private use for purposes of determining ripeness.  Drawing on the principles the Supreme Court elucidated in *Berman v. Parker*, 348 U.S. 26 (1954), *Midkiff*, and most recently in *Kelo v. City of New London*, 545 U.S. 469 (2005), the court in *Goldstein* concluded that the Supreme Court has instructed that

> a taking fails the public use requirement if and only if the uses offered
> to justify it are "palpably without reasonable foundation," [*Midkiff*,
> 467 U.S. at 241], such as if (1) the "sole purpose" of the taking is to
> transfer property to a private party [*Kelo*, 545 U.S. at 477; *Midkiff*,
> 467 U.S. at 245], or (2) the asserted purpose of the taking is a "mere
> pretext" for an actual purpose to bestow a private benefit, [*Kelo*, 545
> U.S. at 478].

*Goldstein*, 488 F. Supp. 2d at 286.

This Court also draws guidance, naturally, from the Supreme Court itself. As the Supreme Court reaffirmed in *Kelo*, "'When the legislature's purpose is legitimate and its means are not irrational, our cases make clear that empirical debates over the wisdom of takings – no less than debates over the wisdom of other kinds of socioeconomic legislation – are not to be carried out in the federal courts.'" *Kelo*, 545 U.S. at 488 (quoting *Midkiff*, 467 U.S. at 242-43). Justice Kennedy, in an influential fifth-vote concurrence in *Kelo*, further observed that "[a] court confronted with a plausible accusation of impermissible favoritism to private parties should treat the objection as a serious one and review the record to see if it has merit, though with the presumption that the government's actions were reasonable and intended to serve a public purpose." *Id.* at 491 (Kennedy, J., concurring).

Viewed against these standards, Plaintiffs' allegations, if proven, cannot show that the challenged takings are for a private use and thus fail the public use requirement.[11]  In undertaking this review, this Court is cognizant that the Supreme Court recently observed in *Twombly* that a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974.

---

[11]For the purposes of this discussion, the Court assumes without deciding that Plaintiffs have asserted valid property interests as alleged in their Complaints.

In its brief, CBS Outdoor well summarized Plaintiffs' allegations regarding the "private purpose" of the Monetization Program:

> In the Amended Complaint, CBS alleges that the Monetization Scheme threatens to destroy the value of CBS's property rights for an arbitrary, non-public purpose. CBS alleges that the Monetization Scheme awards twenty-year contracts, which contradicts the public purpose in the 2004 amendments of increasing the control and monitoring of billboard operations by State agencies. CBS alleges that All Vision and its Monetization Scheme were chosen by NJT even though they promised far less money to NJT, and were far less qualified, than their competing bidder. CBS also alleges that the scheme will provide All Vision with a "grossly disproportionate and irrational payment" in the form of a commission on a *twenty*-year monetization payment even though All Vision's management contract is only for *five* years. In this way, the Monetization Scheme "represents an attempt to transfer economic value owned by CBS Outdoor to All Vision," and therefore "[n]o governmental or public purpose is served by the Monetization Scheme." Indeed, because the Monetization Scheme "does not provide All Vision or NJT with any greater regulatory control over the billboard sites or the content of the advertising displayed on those billboards," and because it "specifically empowers All Vision to capture a disproportionate value by giving it revenue that is not attributable to the period of time in which it has a management contract with New Jersey Transit," "[t]he Monetization Scheme *contradicts* the public purpose of the 2004 Outdoor Advertising Amendments."

(CBS Outdoor Br. at 33-34 (citations omitted) (emphasis in original).)

To establish violation of the public use requirement, the taking must be "palpably without reasonable foundation" and "rationally related to a conceivable public purpose." *Midkiff*, 467 U.S. at 241; *see also Kelo*, 545 U.S. at 490 (Kennedy, J., concurring).[12] Even if proven, Plaintiffs' allegations that the Monetization Program provides All Vision with a "grossly

---

[12]As a panel of the Third Circuit remarked in an unpublished opinion, "[b]ecause almost any public action can be justified as rational, successful claims of a taking for private use are rare." *Theodorou v. Measel*, 53 F. App'x 640, 642 n.2 (3d Cir. 2002).

disproportionate and irrational payment" does not mean that the Program's "sole" purpose is to transfer property to All Vision, a private party. Furthermore, even if this Court assumes that the Monetization Program contradicts the purpose of the 2004 Outdoor Advertising Amendments, this does not mean that the Program does not have any reasonable foundation in a public purpose. NJ Transit's purpose here, as recognized in a different context by the Appellate Division, is to maximize income and employ innovative approaches to its billboard management. In doing so, All Vision certainly benefits by way of its fees, but NJ Transit gains significant benefit as well, and Plaintiffs do not allege otherwise. Thus, the taking here, assuming there is a taking, is not for a *solely* private use. In any event, this case does not require this Court to determine whether the Monetization Program fully comports with the purposes of the Amendments or represents the best way for NJ Transit to comply with the Amendments. This Court cannot say that the Program is "palpably without reasonable foundation" in light of the public bidding requirement of the Amendments.

Plaintiffs' bald legal allegations of arbitrariness and irrationality need not be accepted by this Court. Rather, Plaintiffs' factual allegations must be sufficient to make such a legal conclusion "plausible." *Twombly*, 127 S. Ct. at 1974; *Kanter*, 489 F.3d at 177 ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.") (quoting *Evancho*, 423 F.3d at 351). Plaintiffs allege that the Program promises less money to NJ Transit than CBS Outdoor Group did in their losing bid for the management contract, but this allegation implicitly recognizes that the Program provides *some* money to NJ Transit. "[T]he government's pursuit of a public purpose will often benefit individual private parties," and "[a]ny number of cases illustrate that the achievement of a public good often

30

coincides with the immediate benefiting of private parties." *Kelo*, 545 U.S. at 485, 486 n.14.
The Monetization Scheme, as alleged by Plaintiffs, involves substantial up-front payments to NJ
Transit, and thus the agency derives financial benefit from the Program, even if All Vision
undoubtedly also benefits.  Assuming all of Plaintiffs' allegations to be true, therefore, Plaintiffs
do not establish that the uses offered to justify the taking "palpably without reasonable
foundation" or that "the 'sole purpose' of the taking is to transfer property to a private party."
*Goldstein*, 488 F. Supp. 2d at 286 (quoting *Midkiff* and *Kelo*).

With regard to CBS Outdoor's allegations of favoritism or bias with regard to the actions
of a NJ Transit consultant during the management contract bidding process, Justice Kennedy
commented in *Kelo* that "[a] court confronted with a *plausible* accusation of impermissible
favoritism to private parties should treat the objection as a serious one and review the record to
see if it has merit, though with the presumption that the government's actions were reasonable
and intended to serve a public purpose."  *Kelo*, 545 U.S. at 491 (Kennedy, J., concurring)
(emphasis added).  "This instruction is consistent with the rule that a plaintiff must allege
'enough facts to state a claim to relief that is *plausible*' in order to survive a motion to dismiss
for failure to state a claim."  *Goldstein*, 488 F. Supp. 2d at 288 (emphasis in original) (quoting
*Twombly*, 127 S. Ct. at 1974.  To satisfy the "mere pretext" test for private use, CBS Outdoor
must do more than "alleg[e] that the purported purposes of the Project are dubious," but instead
must "allege that the 'actual purpose' of the Project is to 'bestow a private benefit.'"  *Id.*
Although the plaintiffs in *Goldstein* alleged that (1) by taking their property and giving it to a
private party, "defendants intend[ed] to benefit [the private party]" and that (2) "[d]efendants'
desire to confer a private benefit to [the private party] was a substantial, motivating factor, in

31

defendants' decision to seize plaintiffs' property," the *Goldstein* court – relying on *Twombly* – found that "[s]uch a conclusory allegation is not sufficient to withstand a motion to dismiss." 488 F. Supp. 2d at 288-89 (internal quotation marks omitted).

Plaintiffs' Complaints appear to contain more detailed allegations than those in the complaint at issue in *Goldstein*. However, the allegations do not tend to show that the asserted purposes of income maximization, implementation of the Amendments, and innovation are "mere pretexts" for an actual purpose to bestow a private benefit on All Vision. CBS Outdoor's allegations regarding bias are presented in CBS Outdoor's Complaint in the context of background to criticize "New Jersey Transit's decision to award the management contract to All Vision." (CBS Outdoor First Am. Compl. ¶ 81.) CBS Outdoor alleges that bias and favoritism played a role in the award of the management contract to All Vision, but Plaintiff's takings claims challenge the implementation of the Monetization Scheme itself.

With regard the award to All Vision, CBS Outdoor's allegations regarding bias were sharply rejected by the Appellate Division in *Viacom Outdoor*. 2006 WL 2192008, at *8. While the state appellate court's opinion was issued in a different context and is not controlling here, this Court is loath to ignore the considered findings of the state court on this matter of state concern.[13] The state court's holding regarding CBS Outdoor's bias allegations in award of the management contract – "founded on unsupported allegations and speculation lacking factual support" – only strengthens this Court's view that CBS Outdoor has not made out a claim of

_____

[13]As noted, in considering whether to dismiss for unripeness, the Court "is not limited to the face of the pleadings in deciding such a motion. As long as the parties are given an adequate opportunity to address the justiciability of the claim, the district court may inquire, by affidavits or otherwise, into facts as they exist." *Taylor Inv., Ltd. v. Upper Darby Township*, 983 F.2d 1285, 1290 n.7 (3d Cir. 1993).

private use based on favoritism or bias.  Just as in *Goldstein*, Plaintiffs' allegations do not

provide "plausible grounds to infer," *Twombly*, 127 S. Ct. at 1965, an "actual purpose [] to

bestow a private benefit," *Kelo*, 545 U.S. at 478.

Of course, this Court's finding that Plaintiffs have failed to allege sufficiently that the

alleged taking was for a private use does not mean that Plaintiffs do not have a valid takings

claim.  Indeed, "the Takings Clause presupposes that the government has acted in pursuit of a

valid public purpose." *Lingle*, 544 U.S. at 543.  Rather, the very text of the Fifth Amendment

guarantees Plaintiffs "just compensation" if their property is taken for public use.  However, as

the Third Circuit explained in *County Concrete*, "[b]ecause the Fifth Amendment bars not just

the 'taking' of property, but the taking of property 'without just compensation,' a plaintiff

'cannot claim a violation of the Just Compensation Clause until' he or she has exhausted a state's

'procedure for seeking just compensation.'" *Id.* at 168 (quoting *Williamson*, 473 U.S. at 194-95

& n.13).  Because Plaintiffs do not make out a violation of the public use requirement, the

ripeness standards of *Williamson* apply, and Plaintiffs' takings claims are not ripe if they did not

avail themselves of adequate state procedures for seeking just compensation.

C.   Plaintiffs' takings claims are not ripe because they did not first seek just
     compensation via state procedures.

*Williamson* requires that "'if a State provides an adequate procedure for seeking just

compensation,' the plaintiff must have exhausted this procedure in order for his or her Takings

claim to be ripe for federal adjudication." *County Concrete*, 442 F.3d at 167-68 (citing

*Williamson*, 473 U.S. at 194-95)).[14]  Courts in this District have consistently followed this

---

[14]The Third Circuit in *County Concrete* stated:

> Of course, "there is no requirement that a plaintiff exhaust

standard, recognizing that a plaintiff is barred from asserting a just compensation claim in a

federal district court "unless and until he first assert[s] those claims . . . in New Jersey courts."

*Heir v. Del. River Port Auth.*, 218 F. Supp. 2d 627, 633 n.5 (D.N.J. 2002); *see also ISP Envtl.*

*Servs.*, 2007 WL 1302995, at *6-7 (claims based on failure to receive just compensation and on

unlawful taking must have been first presented to state court); *Citizens for a Better Lawnside,*

*Inc. v. Bryant*, No. 05-4286, 2006 WL 3825145, at *6 (D.N.J. Dec. 22, 2006) ("If a state has a

procedure whereby aggrieved property owners can petition for just compensation, there can be no

violation of the Takings Clause under the Fifth and Fourteenth Amendments.").  As the Supreme

Court has recognized, "[s]tate courts are fully competent to adjudicate constitutional challenges

to local land-use decisions" and "undoubtedly have more experience than federal courts do in

resolving the complex factual, technical, and legal questions related to zoning and land-use

regulations."  *San Remo Hotel, L.P. v. City and County of San Francisco, Calif.*, 545 U.S. 323,

347 (2005).

     For the *Williamson* exhaustion requirement to apply, there must exist "a reasonable,

certain and adequate provision for obtaining compensation . . . at the time of the taking."

---

            administrative remedies before bringing a § 1983 action."  Instead of
being a true "exhaustion of state remedies" requirement, however, the
second prong of *Williamson*'s ripeness test merely addresses a unique
aspect of Just Compensation Takings claims.   Because the Fifth
Amendment bars not just the "taking" of property, but the taking of
property "without just compensation," a plaintiff "cannot claim a
violation of the Just Compensation Clause until" he or she has
exhausted a state's "procedure for seeking just compensation."  Only
then can a Takings claimant allege that he or she has actually been
denied just compensation, and, thus, only then is his or her Takings
claim ripe.

*County Concrete*, 442 F.3d at 168 (quoting *Williamson*, 473 U.S. at 192).

*Williamson*, 473 U.S. at 194.  The Third Circuit has recognized that "[a]n inverse condemnation action is a constitutionally adequate procedure for obtaining just compensation when the government seizes property without initiating formal condemnation procedures.[15]  *Peduto v. City of N. Wildwood*, 878 F.2d 725, 728 (3d Cir. 1989) (citing *Collier v. City of Springdale*, 733 F.2d 1311, 1314 (8th Cir. 1984)).  "In New Jersey, jurisdiction in inverse condemnation proceedings is vested in the Law Division of the Superior Court, where the court has the authority to make a factual record of the proceedings."  *Peduto*, 878 F.2d at 728 n.3 (citing *Orleans Builders & Developers v. Byrne*, 186 N.J. Super. 432, 446 (App. Div. 1982); N.J. Stat. Ann. § 20:3-5).  Statutory authority for inverse condemnation actions in New Jersey is provided by the New Jersey Eminent Domain Act of 1971, N.J. Stat. Ann. §§ 20:3-1 *et seq.*  The Act provides:

> The [Superior Court of New Jersey] shall have jurisdiction of all matters in condemnation, and all matters incidental thereto and arising therefrom, including, but without limiting the generality of the foregoing, jurisdiction to determine the authority to exercise the power of eminent domain; to compel the exercise of such power; to fix and determine the compensation to be paid and the parties entitled thereto, and to determine title to all property affected by the action.

N.J. Stat. Ann. § 20:3-5.[16]

---

[15] "In a normal takings case, the 'taking' occurs when the government acts to condemn property in the exercise of its power of eminent domain, while the doctrine of inverse condemnation is predicated on the proposition that a taking may occur without such formal proceedings.  The term 'inverse condemnation' is essentially a short-hand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted."  *Peduto v. City of N. Wildwood*, 878 F.2d 725, 728 n.4 (3d Cir. 1989) (internal citations and quotation marks omitted).

[16] "Inverse condemnation is a remedy designed to protect a landowner whose property has been taken [d]e facto by insuring that he be paid reasonable compensation therefor.  Hence, an appropriation of property by a governmental entity or private corporation having power of eminent domain without its having undertaken to condemn or pay compensation to the landowner for the taking, can be redressed by the owner's action in the nature of Mandamus to

Thus, the *Williamson* exhaustion requirement applies here because it is clear that New Jersey has a constitutionally adequate procedure for Plaintiffs to seek just compensation. It is undisputed that Plaintiffs brought the instant actions in federal court without first seeking just compensation in state court. The Court concludes that the *Williamson* exhaustion requirement applies, and Plaintiffs' takings claims are not ripe. Therefore, the takings claims of Count I of each Plaintiff's Complaint will be dismissed without prejudice. Furthermore, Count III (just compensation) of CBS Outdoor's First Amended Complaint, and Counts II (no necessity for taking), III (unlawful taking), and IV (just compensation) of Carole Media's Complaint will be dismissed without prejudice.[17]

In so ruling, this Court makes no findings regarding the merits of Plaintiffs' takings claims; specifically, the Court does not reach the questions of whether Plaintiffs have protected property interests and what compensation might be due. This Court's decision is limited to the conclusion that Plaintiffs' takings claims are not ripe in federal court. Plaintiffs might indeed

---

compel institution of condemnation proceedings. Condemnation proceedings are normally initiated by the condemning authority; inverse condemnation proceedings are initiated by the landowner hence the 'inverse' label." *In the Matter of Jersey Cent. Power and Light Co.*, 166 N.J. Super. 540, 544 (App. Div. 1979)

[17]As noted previously, in considering whether to dismiss for unripeness, it "is not limited to the face of the pleadings in deciding such a motion. As long as the parties are given an adequate opportunity to address the justiciability of the claim, the district court may inquire, by affidavits or otherwise, into facts as they exist." *Taylor Inv., Ltd. v. Upper Darby Township*, 983 F.2d 1285, 1290 n.7 (3d Cir. 1993). To this end, the Court has reviewed the various affidavits submitted with regard to the motions to dismiss and the motions for a preliminary injunction. While there has been continued conversations and threats among the parties, and further evidence has been provided regarding the nature of the alleged Monetization Program, the papers submitted to the Court demonstrate that Plaintiffs have not utilized New Jersey's procedures for seeking just compensation. Therefore, considering "the facts as they exist" beyond the pleadings, this Court is persuaded that Plaintiffs' takings claims are unripe and should be dismissed.

have a valid takings claim and might establish a right to just compensation; however, such a

claim is premature in federal court and must first be presented in New Jersey state court.   As the

Supreme Court has observed, "there is scant precedent for the litigation in federal district court of

claims that a state agency has taken property in violation of the Fifth Amendment's takings

clause.  To the contrary, most of the cases in our takings jurisprudence . . . came to us on writs of

certiorari from state courts of last resort."  *San Remo Hotel*, 545 U.S. at 347.

Because Count I of both Complaints raise takings and due process claims, this Court will

next address the due process claims.


## II.     Plaintiffs' Substantive Due Process Claims Must Be Dismissed For Failure to State a Claim

"In contrast to a Just Compensation Takings Claim . . . [t]he absence of 'just

compensation' is not part of a due process . . . injury."  *County Concrete*, 442 F.3d at 168-69

(citing *Williamson*, 473 U.S. at 197).  Because the *Williamson* "'exhaustion of just compensation

procedures' requirement only exists due to the 'special nature of the Just Compensation Clause,'

it is inapplicable to" Plaintiffs' substantive due process claims.  *Id.* at 169.  The Court will

therefore assess Plaintiffs' substantive due process claims on the merits to determine whether

they survive Defendants' motion to dismiss.[18]

_____

[18]*Williamson* requires that for both takings claims and related due process claims to be
ripe, the finality requirement must also be met.  "A claim that the application of government
regulations effects a taking of a property interest is not ripe until the government entity charged
with implementing the regulations has reached a final decision regarding the application of the
regulations to the property at issue."  *Williamson*, 473 U.S. at 186.  This rule "bars not only
as-applied Just Compensation Takings claims, but also as-applied substantive due process . . .
'claims by property owners or tenants who have challenged the denial of a permit by an initial
decision-maker but failed to take advantage of available, subsequent procedures.'"  *County*

Plaintiffs bring substantive due process claims under the Due Process Clause of the

Fourteenth Amendment to the United States Constitution and under the New Jersey

Constitution.[19]  "'[T]he core of the concept' of due process is 'protection against arbitrary action'

and . . . 'only the most egregious official conduct can be said to be 'arbitrary in the constitutional

sense.'"  *United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 399 (3d Cir.

2003) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998)).

In *County Concrete*, the Third Circuit reiterated the standard for substantive due process

challenges:

> As Judge, now Justice, Alito explained in *Nicholas v. Pennsylvania
> State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000), "typically, a
> legislative act will withstand substantive due process challenge if
> the government 'identifies the legitimate state interest that the
> legislature could rationally conclude was served by the statute.'"
> *Id.* (citation omitted).  On the other hand, non-legislative state
> action violates substantive due process if "arbitrary, irrational, or

---

*Concrete*, 442 F.3d at 164 (quoting *Lauderbaugh v. Hopewell Twp.*, 319 F.3d 568, 574 (3d Cir.
2003)).  The finality rule applies whether plaintiffs attack a decision through a takings claim or
on a theory of violation substantive due process, procedural due process, or equal protection.  *See
Taylor Inv.*, at 1291-92.  While the Court has some doubt whether the implementation of the
Monetization Program in all its facets is truly final, based on Plaintiffs' allegations and the facts
as they exist, the Court will assume that Plaintiffs' due process claims are ripe.

[19]The Fourteenth Amendment provides, in pertinent part, that "[n]o state ... shall ...
deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend.
XIV, § 1.  "The New Jersey Supreme Court has noted that Article 1, paragraph 1 of the New
Jersey Constitution encompasses the same due process rights guaranteed under the Federal
Constitution."  *Marshall v. Lauriault*, 372 F.3d 175, 187 (3d Cir. 2004) (citing *Montville Twp. v.
Block 69, Lot 10*, 74 N.J. 1,18-19 (1977)).  Although the Supreme Court of New Jersey has "at
times interpreted [the] State Constitution to provide greater protections than those existing under
analogous Federal provisions," no party makes such an argument here.  *Montville Twp.*, 74 N.J.
at 18.  Indeed, the parties – while vigorously contesting the validity and sufficiency of Plaintiffs'
due process claims – fail even to mention the New Jersey Constitution's due process provisions
despite Plaintiffs having pled violations of it in their Complaints.

tainted by improper motive," or if "so egregious that it 'shocks the conscience.'" *Id.*

*County Concrete*, 442 F.3d at 169.

    A.    <u>CBS Outdoor's Facial Challenge to the Amendments Must Be Dismissed.</u>

CBS Outdoor's constitutional challenge attacks "[t]he 2004 Outdoor Advertising Amendments and the implementation of the All Vision Monetization Scheme." (CBS Outdoor First Am. Compl. ¶ 122, 130.)  However, Carole Media only challenges the Monetization Program itself.  "Nor is Carole Media challenging any of the applicable statutes.  Carole Media has not asserted a single count challenging the constitutionality of the Amendment or any other New Jersey statute." (Carole Media Br. at 21 n.7.)  Thus, this Court first addresses what appears to be CBS Outdoor's facial challenge to the 2004 Outdoor Advertising Amendments.

With regard to CBS Outdoor's challenge to this legislative act, "to state a claim, [Plaintiff's] complaint would have to allege facts that would support a finding of arbitrary or irrational legislative action."  *Pace Resources, Inc. v. Shrewsbury Twp.*, 808 F.2d 1023, 1035 (3d Cir. 1987).  CBS Outdoor's First Amended Complaint contains merely conclusory allegations in this regard.  The section in its First Amended Complaint regarding the 2004 Outdoor Advertising Amendments fails to allege that the Amendments are arbitrary or irrational.  Rather, CBS Outdoor simply alleges that "if the 2004 Outdoor Advertising Amendments had not called for the public bidding of all licenses to operate billboards on state land, New Jersey Transit would not have sought to terminate any of the billboard licenses held by CBS Outdoor." (CBS Outdoor First Am. Compl. ¶ 74.)  However, construed in the light most favorable to CBS Outdoor, this allegation relates to its as-applied challenge to the implementation of the Monetization Program

pursuant to the Amendments, and not to a challenge to the Amendments themselves.  Indeed, CBS Outdoor in fact alleges, as discussed above, that the Monetization Program contradicts the public purposes of the Amendments and devotes considerable time in its Complaint to recounting these public purposes.  (*E.g.*, *id.* at ¶ 104 ("Those Amendments were designed to impose greater regulatory control over the licensing of billboards on public land, precisely in order to prevent state agencies from entering into special arrangements with specific parties that enable those parties to capture a disproportionate value from those billboards.").)  By conceding that the Amendments have a public purpose, and attacking the Program by claiming that it fails to comport with these purposes, CBS Outdoor severely undermines any claim it might have that the Amendments themselves are irrational and arbitrary.

In its brief, CBS Outdoor fails to make any argument that its due process claims are directed to the Amendments themselves.  (CBS Outdoor Br. at 22-25.)  Rather, it argues that its due process and takings claims are the same: they both challenge NJ Transit's taking of property for a non-public and irrational purpose, and seek relief on whatever ground available.  Its allegations with regard to the 2004 Outdoor Advertising Amendments themselves are limited to a takings rationale: "the 2004 Outdoor Advertising Amendments . . . constitute a taking of property that does not serve any public purpose and hence is prohibited by the Takings Clause and Due Process Clauses of the United States and New Jersey Constitutions."  (CBS Outdoor First Am. Compl. ¶ 122.)  Because the Complaint contains no allegations that would support a claim that the Amendments themselves are arbitrary or irrational, this Court must dismiss any facial challenge by CBS Outdoor to the Amendments.

**B.**     Plaintiffs' As-Applied Substantive Due Process Challenges to the Monetization
Program Must Be Dismissed.

For the purposes of this analysis, this Court assumes without deciding that Plaintiffs have

alleged property interests that are protected by due process.  No matter which property interests

might be implicated, Plaintiffs' allegations cannot show that the implementation of the

Monetization Scheme shocks the conscience.  "In a substantive due process challenge to an

action taken by an executive branch official, 'the threshold question is whether the behavior of

the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the

contemporary conscience.'"  *Kaucher v. County of Bucks*, 455 F.3d 418, 425 (3d Cir. 2006)

(quoting *Lewis*, 523 U.S. at 847 n.8).  In *United Artists,* now-Justice Alito held for the Third

Circuit that "our cases have repeatedly acknowledged that executive action violates substantive

due process only when it shocks the conscience but that the meaning of this standard varies

depending on the factual context."  316 F.3d at 399-400.  The fact that this case is a land-use case

does not remove Plaintiffs' challenge from the shocks-the-conscience standard.  *Id.* at 401

("[W]e see no reason why the present case should be exempted from the *Lewis*

shocks-the-conscience test simply because the case concerns a land use dispute.").  In so holding,

the Third Circuit rejected application of a lesser, "improper motive" test.  *Id.* at 400-02.

"Land-use decisions are matters of local concern, and such disputes should not be transformed

into substantive due process claims based only on allegations that government officials acted

with 'improper' motives."  *Id.* at 402.

At the outset, CBS Outdoor argues that whether the alleged conduct shocks the

conscience should at least be a factual issue for a jury and therefore is inappropriate to resolve on

a motion to dismiss.  However, "[b]ecause the conscience-shocking standard is intended to limit substantive due process liability, it is an issue of law for the judge, not a question of fact for the jury."  *Terrell v. Larson*, 396 F.3d 975, 981 (8th Cir. 2005); *see also United States v. Engler*, 806 F.2d 425, 430 (3d Cir. 1986) ("The question whether government conduct was so outrageous as to constitute a violation of due process is a question of law to be determined by the court, not the jury.").  The Third Circuit's holding in *United Artists* that the meaning of the "shocks the conscience" standard "varies depending on the factual context," does not mean, as CBS Outdoor appears to contend, that there is a question of fact for a jury to decide, but rather simply acknowledges that the application of the standard may vary depending on the circumstances. Therefore, it is proper for a court to apply the conscience-shocking standard to a motion to dismiss and grant the motion if the conduct as alleged and viewed in the light most favorable to plaintiff is not so egregious and outrageous as to "shock the conscience."  *See, e.g.*, *Wessie Corp. v. Sea Isle City Zoning Bd. of Adjustment*, Civ. No. 06-589, 2007 WL 1892473, at *3-6 (D.N.J. June 29, 2007) (dismissing substantive due process claim on motion to dismiss because alleged misconduct did not shock the conscience); *Church of the Hills v. Twp. of Bedminster*, Civil No. 05-3332, 2006 WL 462674, at *12 (D.N.J. Feb. 24, 2006) (same).

This Court finds that the Monetization Program, as alleged by Plaintiffs, is not so egregious that it shocks the conscience.  "At one end of the spectrum of culpable conduct, negligent behavior can never rise to the level of conscience shocking.  At the other end of the spectrum, actions 'intended to injure in some way unjustifiable by any government interest' are those 'most likely to rise to the conscience-shocking level.'  Acts that fall between the extremes of mere negligence and harmful intent require courts to make 'closer calls,' based on a

context-specific inquiry." *Kaucher*, 455 F.3d at 426 (quoting *Lewis*, 523 U.S. at 849).  Plaintiffs'

allegations charge that the Monetization Scheme is unlawful, irrational, and will destroy the

value of their property.  However, as discussed above, the Monetization Program finds at least

some justification in the interests of income maximization and innovation that NJ Transit sought

to advance by awarding the contract to All Vision and taking steps to adopt All Vision's

monetization proposal.  The decision of the Appellate Division in *Viacom Outdoor* aides this

Court's analysis.  The Appellate Division held that "NJ Transit did not grossly abuse the

considerable discretion vested in it to award a contract for billboard advertising services."

*Viacom Outdoor Group*, 2006 WL 2192008, at *8.  The Appellate Divisions's findings support

this Court's conclusion that the Monetization Program serves governmental purposes and does

not shock the conscience.

"[O]nly the most egregious official conduct" shocks the conscience, and the alleged

misconduct here fails to rise to such a level.  *See Eichenlaub v. Twp. of Indiana*, 385 F.3d 274,

285 (3d Cir. 2004) (citation omitted).  In the analogous zoning context, the Third Circuit has held

that "every appeal by a disappointed developer from an adverse ruling of the local planning board

involves some claim of abuse of legal authority, but 'it is not enough simply to give these state

law claims constitutional labels such as 'due process' or 'equal protection' in order to raise a

substantial federal question under section 1983." *United Artists*, 316 F.3d at 402 (quoting

*Creative Env'ts, Inc. v. Estabrook*, 680 F.2d 822, 833 (1st Cir. 1982)); *see also Eichenlaub*, 385

F.3d at 286.  Similarly here, CBS Outdoor's disappointment with the effect of the Monetization

Program on its billboards is understandable, but the Program as alleged does not, as required for

a substantive due process claim, violate the "decencies of civilized conduct," *Rochin v.*

43

*California*, 342 U.S. 165, 172-73 (1952), and is not so "'brutal' and 'offensive' that [it] did not comport with traditional ideas of fair play and decency," *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957).

For these reasons, this Court must dismiss Plaintiffs' substantive due process claims. Count I (takings and due process) of both Complaints shall be dismissed.  Furthermore, Count V of CBS Outdoor's Complaint and Count VI of Carole Media's Complaint seek a declaration and injunction based on "*ultra vires* and irrational state action."  Plaintiffs claim that NJ Transit lacks statutory authority to implement the Monetization Program and that the Program is an abuse of discretion and arbitrary and capricious.   Such claims are necessarily duplicative of those alleging violation of substantive due process, and will be dismissed.[20]

In addition, Count II of CBS Outdoor's Complaint seeks declaratory and injunctive relief against Brooks, the Director of Outdoor Advertising for NJDOT, to prevent him from issuing allegedly illegal new permits in accordance with the Monetization Program.  However, CBS Outdoor concedes in its brief that "in paragraph 125 of Count II, CBS specifically invokes the Takings Clause and the Due Process Clause as the basis for its allegation that the threatened issuance of new permits will destroy the value of its existing permits."  (CBS Outdoor Br. at 26.) This Court has concluded that CBS Outdoor's takings claims are not ripe and its due process claims must be dismissed.  Therefore, this Court will also dismiss Count II of CBS Outdoor's First Amended Complaint.

-------------

[20]To the extent that these Counts allege state law claims, this Court declines to exercise supplemental jurisdiction over these claims, as this case is premised on federal question subject matter jurisdiction.  CBS Outdoor and All Vision are both citizens of New York because their principal place of business is in New York.  Subject matter jurisdiction with regard to Carole Media is discussed below in Part IV.

**III.**    **CBS Outdoor's Contract Clause Claim Must Be Dismissed**

The United States Constitution provides, in relevant part, that "no state shall enter into any . . . Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10.  The Contract Clauses of the United States Constitution and the New Jersey Constitution, N.J. Const. art. IV, § 7, ¶ 3 provide "parallel guarantees," and there is "no need to draw a distinction between the two provisions."  *Fid. Union Trust Co. v. N.J. Highway Auth.*, 85 N.J. 277, 299-300 (1981).  "A Contract Clause analysis requires three threshold inquiries: (1) whether there is a contractual relationship; (2) whether a change in a law has impaired that contractual relationship; and (3) whether the impairment is substantial."  *Transp. Workers Union, Local 290 v. SEPTA*, 145 F.3d 619, 621 (3d Cir. 1998).  "If it is determined that a substantial impairment of a contractual relationship has occurred, the court must further inquire whether the law at issue has a legitimate and important public purpose and whether the adjustment of the rights of the parties to the contractual relationship was reasonable and appropriate in light of that purpose."  *Id.* (citing *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 242-44 (1978)).

In Count IV of its Complaint, CBS brings a claim pursuant to the Contract Clauses of the federal and state constitutions based on the Monetization Program's alleged interference with its contract with the township of Weehawken.  As discussed earlier in this Opinion, CBS Outdoor is the assignee of a contract with Weehawken to operate two billboards located with the Lincoln Tunnel Helix area through 2016.  The contract with Weehawken required CBS Outdoor's predecessor-in-interest to make a large up-front payment to Weehawken in order to secure the right to operate billboards on the sites, and allowed NJ Transit to use one side of each of the two billboards for public advertisements and promotion of mass transportation use.  CBS Outdoor

45

seeks a declaration and injunction barring NJ Transit from interfering with the Weehawken

contract and contends that the implementation of the Monetization Program "threatens to impair

CBS Outdoor's ability to receive the benefits of its contract with Weehawken."  (CBS Outdoor

First Am. Compl. ¶ 134.)  It further alleges that interference with the contract by way of the

Monetization Program does not serve any legitimate public purpose.

"[T]he Contract Clause has never been thought to protect against the exercise of the

power of eminent domain."  *Midkiff*, 467 U.S. at 243 n.6 (citing *United States Trust Co. v. New

Jersey*, 431 U.S. 1, 19 & n.16 (1977)).  Even assuming CBS Outdoor's allegations to be true that

the Monetization Program would substantially impair the CBS Outdoor-Weehawken contractual

relationship,[21] this Court concludes that Plaintiffs' allegations fail to state a claim that there is no

" legitimate and important public purpose" for the interference and that the "adjustment of the

rights of the parties to the contractual relationship" was not "reasonable and appropriate in light

of that purpose."  *Transp. Workers Union*, 145 F.3d at 621.  Just as with the due process analysis,

this Court may find on a motion to dismiss that NJ Transit has a significant and legitimate public

purpose to its alleged interference with the contractual relationship.  *See, e.g.*, *Med. Soc'y of New

Jersey v. Mottola*, 320 F. Supp. 2d 254, 272 (D.N.J. 2004) (dismissing Contract Clause claim on

Rule 12(b)(6) because "even if [law] did cause a substantial impairment to existing contracts, this

disservice does not amount to a violation of the Contract Clause because the State has 'a

---

[21]NJ Transit reasonably argues that CBS Outdoor has not alleged substantial impairment here.  "If, after these billboard locations are competitively bid by NJ Transit, and if CBS Outdoor were to win the solicitation, there will be no change whatever in its relationship with Weehawken.  If, on the other hand, another company were to win the solicitation, CBS Outdoor would be free to assign the Weehawken contract to the new licensee for valuable consideration, thus recouping its investment."  (NJ Transit Br. at 27-28.)  The Court need not evaluate this argument because CBS Outdoor's Contract Clause claim may be dismissed on other grounds.

significant and legitimate public purpose' behind the legislation") (citing *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411-12 (1983)).  The Court so finds based on the discussion of the legitimate government interests behind the Amendments and the Monetization Program discussed above.

In any event, CBS Outdoor's Contract Clause claim may be seen a mere repackaging of its unripe taking claims.  The Supreme Court has stated that "[c]ontract rights are a form of property and as such may be taken for a public purpose provided that just compensation is paid." *U.S. Trust Co.*, 431 U.S. at 19 n.16.  As with the takings claims, CBS Outdoor's remedy for any interference with its Weehawken contract is just compensation, not an injunction.  For these reasons, this Court will dismiss Count IV of CBS Outdoor's First Amended Complaint.

## IV.     This Court Declines to Exercise Supplemental Jurisdiction Over Carole Media's State-Law Claims

This Court has addressed all Counts of CBS Outdoor's First Amended Complaint, and has discussed the counts of Carole Media's Complaint that may also be found in CBS Outdoor's pleading.  Remaining for analysis are Carole Media's three New Jersey state-law claims: breach of the covenant of good faith and fair dealing (Count V), tortious interference with contractual relations (Count VII) and tortious interference with prospective business advantage (Count VIII).

According to its Complaint, Plaintiff Carole Media is a New Jersey limited liability company with its principal place of business in Florida.  (Carole Media Compl. ¶ 4.)  Defendant NJ Transit is New Jersey's public transportation, and All Vision is a Delaware corporation with its principal place of business in New York.  (*Id.* at ¶¶ 5, 6.)  While the Third

Circuit has not definitively resolved the issue of the citizenship of a limited liability company for purposes of diversity jurisdiction pursuant to 28 U.S.C. § 1332, "District Courts in this Circuit have generally held that the citizenship of a limited liability company is determined by the citizenship of its members." *Hessert Const. New Jersey, L.L.C. v. Garrison Architects, P.C.*, Civ. No. 06-5696, 2007 WL 2066355, at *2 (D.N.J. Jul. 13, 2007) (collecting cases). "The great weight of authority from other jurisdictions likewise treats limited liability companies like limited partnerships and holds that the limited liability company is a citizen of each and every state in which one of its members is a citizen." *Id.* (collecting cases).

Plaintiff has the burden to show that this Court has jurisdiction. *Id.* at *3 (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). Carole Media has failed to allege the citizenship of its members, and indeed only alleges with regard to subject matter jurisdiction that "[t]his Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331," the federal question jurisdiction statute. (Carole Media Compl. ¶ 7.) Because Carole Media has not alleged or supported any assertion of diversity jurisdiction, this Court concludes that its subject matter jurisdiction with regard to Carole Media results solely from § 1331 based on the presence of federal questions.

Because this Court must dismiss Carole Media's federal claims, this Court declines to exercise supplemental jurisdiction over Carole Media's remaining, pendent state law claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction.") "[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial

economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995).  In light of the basis for this Court's dismissal of Plaintiffs' takings claims – because they are not ripe and Plaintiffs must seek just compensation in state court – this Court sees no reason to maintain jurisdiction over the state-law claims.

This Court will therefore decline to exercise jurisdiction over Carole Media's state law claims, and will dismiss Counts V, VII, and VIII of Carole Media's Complaint without prejudice.


### Conclusion & Order

For the aforementioned reasons, it is hereby ORDERED that Defendants' motions to dismiss Plaintiff CBS Outdoor's First Amended Complaint (Docket Nos. 10 and 12 in Case No. 06-2428) are GRANTED.  It is hereby further ORDERED that Defendants' motions to dismiss Plaintiff Carole Media's Complaint (Docket Nos. 9 and 10 in Case No. 06-4529) are GRANTED.  Plaintiffs' motions for a preliminary injunction (Docket Nos. 43, 45, and 53 in Case No. 06-2428) are DENIED AS MOOT.  Plaintiffs' Complaints are dismissed without prejudice.  The Clerk of the Court shall mark this matter CLOSED.


Dated: August 30, 2007
Newark, New Jersey

s/ Harold A. Ackerman
U.S.D.J.